IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * Criminal Case No. PWG-19-140-13 |
| ADAM MARTIN, | * |
| Defendant | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Adam Martin's appeal of a detention order issued by Chief Magistrate Judge Beth Gesner. Martin is charged with conspiracy to distribute controlled substances (heroin, cocaine) in violation of 21 U.S.C. § 846. If convicted, he faces a sentence of not less than ten years incarceration, up to a maximum term of life imprisonment. In a written ruling entered following a detention hearing held on June 25, 2019, Chief Judge Gesner observed that there was a presumption under 18 U.S.C. § 3142(e)(3)(A) (the "Bail Reform Act") that Martin should be detained, which he had not rebutted. ECF No. 71. She further found by clear and convincing evidence that due to: the nature of the case against Martin, his role in the offense, the weight of the evidence against him (including substantial intercepted wire conversations discussing the use of guns and violence and the seizure of firearms from Martin), coupled with his prior poor adjustment to community supervision, violations of probation, and commission of the charged misconduct while on court supervision, that he should be detained. *Id.* Martin appealed, citing the circumstances regarding the COVID-19 pandemic as reason for his

release. ("Appeal"), ECF No. 206. The Government has filed an opposition, ECF No. 207, and Martin a reply, ECF No. 208. For the reasons discussed below, Martin's appeal is DENIED.

## **Background**

The essence of Martin's appeal is that the recent state of emergency declared by the Federal and Maryland State governments relating to the COVID-19 pandemic constitutes information not known by him at the time of his detention hearing that is material to whether there are conditions of release that may be fashioned to assure his appearance at trial and protect the community under 18 U.S.C. § 3142(f)(2)(B). Appeal at 5. Specifically, Martin contends that he suffers from diabetes, high blood pressure, asthma, and pain, and worries that his continued detention in the Chesapeake Detention Facility ("CDF") likely will cause him to fall victim to the COVID-19 virus, and that the medical and correctional authorities at CDF will be overwhelmed with inmates who have contracted the virus, and unable to provide him with adequate care. Appeal at 2–4; *see also* Communication of Health Needs, June 24, 2019, ECF No. 32. He seeks release to the third-party custody of his wife with "24/7 electronic monitoring." Appeal at 4. He argues that his lifelong residence in Baltimore means that he is not a flight risk, and that, his extensive criminal history notwithstanding, none of his prior offenses are for crimes of violence (but acknowledges that he has two prior firearms convictions). *Id.* at 3–4. Therefore, he concludes, he is not a danger to the community. *Id.* He asks for and expedited hearing at which he wants the warden and director of health services at CDF to testify. *Id.* at 5.

The Government sees things quite differently. It points out that Martin has not challenged, let alone rebutted, any of Chief Judge Gesner's factual findings, nor has he overcome the presumption of detention. Opposition at 1. It argues that Martin is a lead defendant in a 17-defendant drug conspiracy, and that a search warrant of two stash houses that Martin maintained

yielded five firearms, over 200 grams of cocaine base, and other narcotics. *Id.* at 2. And, it detailed the weight of the evidence that Chief Judge Gesner cited as one of the reasons for his detention, which included: wiretap interceptions where Martin reveals the extent of his leadership role in the drug conspiracy, intention to "beat the fuck out of" a drug associate who he thought had stolen drugs from another co-conspirator, as well as intercepted conversations where Martin and his confederates discussed procuring firearms to aid in the conspiracy. *Id.* at 4–5.

The Government also highlighted Martin's extensive criminal record (he has managed to accumulate 17 criminal history points, easily securing him a criminal history of VI under the sentencing guidelines, the highest possible category), and his poor adjustment to community and court supervision. *Id.* at 6–7. And, the Government urges the Court to consider the nature and seriousness of the danger that it perceives that Martin poses to the community in the event of his release. *Id.* at 7–8. The Government also argues that state correction officials at CDF have established comprehensive health measures to avoid a COVID-19 outbreak, that there are (for now, at least) no known cases of any detainees at CDF having contracted the virus, and that, in essence, Martin seeks release on the mere speculation that he will become ill. *Id.* at 8–12. In this regard, the Government lauds what it views as the "substantial experience" of correctional officials in Maryland with dealing with transmission of viruses within a detention facility, including successfully dealing with serious diseases such as "HIV/AIDS, MRSA, sexually transmitted diseases, viral hepatitis, tuberculosis, and seasonal influenza." *Id.* at 9. Finally, citing *United States v. Williams*, 753 F. 2d 329, 331 & n.7 (4th Cir. 1985), the Government argues that this court may resolve Martin's appeal on the written submissions, accepting the proffers of counsel for the facts upon which they rely. *Id.* at 3, n.2.

In his reply, Martin repeats his earlier arguments, expresses his belief that it will be just a matter of time before he contracts COVID-19 if he remains detained, and that the Government's faith in the ability of CDF to prevent, let alone contain and treat an outbreak of the virus, does not warrant taking the risk that he would face if his detention continues. Reply at 1-3.

**Discussion**

Before addressing the arguments of the parties and the evidence before me, it is important to recognize the unprecedented magnitude of the COVID-19 pandemic. While correctional officials at CDF and other facilities in Maryland may successfully have dealt with past viruses and outbreaks of communicable diseases, they pale in scope with the magnitude and speed of transmission of COVID-19. This virus comes in the form of a world-wide pandemic, resulting in a declaration of a national emergency by the federal government, and state of emergency by the State of Maryland. With no known effective treatment, and vaccines months (or more) away, public health officials have been left to urge the public to practice "social distancing," frequent (and thorough) hand washing, and avoidance of close contact with others (in increasingly more restrictive terms)—all of which are extremely difficult to implement in a detention facility. For this reason, the Court takes this health risk extremely seriously, and recognizes that it can indeed constitute new information having a material bearing on whether there are conditions of release that will reasonably assure the appearance of detained defendants and secure the safety of the community. 18 U.S.C. § 3142(f)(2)(B). Indeed, the Due Process Clauses of the Fifth or Fourteenth Amendments, for federal and state pretrial detainees, respectively, may well be implicated if defendants awaiting trial can demonstrate that they are being subjected to conditions of confinement that would subject them to exposure to serious (potentially fatal, if the detainee is elderly and with underlying medical complications) illness. *See Bell v. Wolfish*, 441 U.S. 520, 535

(1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."); *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("The Due Process Clause, however, does require the responsible government or governmental agency to provide medical care to [pretrial detainees] who have been injured . . . ."); *Loe v. Armistead*, 582 F.2d 1291, 1293–94 (4th Cir. 1978) ("[Defendant] was not a prisoner detained under a judgment of conviction; rather, he was a pretrial detainee. Under such circumstances, the protections that apply to him are found in the due process clause of the fifth amendment, since he was a federal prisoner, rather than in the eighth amendment's prohibition against cruel and unusual punishment."); *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (For state pretrial detainee, "the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care to *detainees* who require it.") (emphasis in original).

But as concerning as the COVID-19 pandemic is, resolving an appeal of an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act, 18 U.S.C. § 3142(g): the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the alleged offense conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's

5

release. When addressing an appeal of a detention order, the Court must reach a determination promptly. 18 U.S.C. § 3145(c).

While the Bail Reform Act is silent about whether the defendant is entitled to an in-court hearing on an appeal of a detention order, there is ample authority for the conclusion that the Court may decide the motion on the filings (including proffers offered by counsel) as opposed to a hearing. 18 U.S.C. § 3145(b) establishes that "[i]f a person is ordered detained by a magistrate judge" that person "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." Upon such a motion, the court must make a *de novo* "determination as to whether the magistrate judge's findings are correct based on the court's review of the evidence before the magistrate judge." *United States v. Sidbury*, No. LWF-15-184, 2015 WL 8481874, at *1 (E.D.N.C. Dec. 8, 2015) (citing *United States v. Williams*, 753 F.2d 329, 333–34 (4th Cir. 1985)). The court "may conduct an evidentiary hearing" as part of its review. *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988). However, "there is no statutory requirement that the court hold a hearing" and the court "retains the discretion to decide whether to hold a hearing." *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019). *See also, Williams*, 753 F.2d at 331 (recognizing that the court may permit the parties to "introduce proffers of evidence" as an alternative way to allow the introduction of new evidence); *United States v. Hensler*, 18 F.3d 936 (5th Cir. 1994) (holding defendant was not entitled to evidentiary hearing); *King*, 849 F.2d at 490 ("based solely on a careful review of the pleadings and the evidence developed at the magistrate's detention hearing, the district court may determine that the magistrate's factual findings are supported and that the magistrate's legal conclusions are correct.").

A *de novo* review of the written submissions and docket filings is especially appropriate in this case, when the Court must endeavor to comply with the federal and State recommendations about avoiding bringing people together in groups larger than ten persons, as well as rule expeditiously.

On the record before me, I conclude that Chief Magistrate Judge Gesner's initial assessment of Martin was correct. Given the nature of the charges against him, there is a presumption that he should be detained. As set forth in the Government's proffer (and confirmed by Chief Judge Gesner's detention order), Martin is charged with being a lead-defendant in a multi-defendant drug conspiracy operating in Baltimore City. If convicted, he must be sentenced to a mandatory minimum term of ten years incarceration, up to a maximum term of life imprisonment. Search warrants executed on safe houses controlled by him produced substantial amounts of controlled substances and multiple firearms. Wiretap intercepts confirmed the degree of his involvement in the conspiracy, as well as his inclination to resort to violence to deal with persons thought to have stolen drugs from a co-conspirator. He was intercepted discussing the use of guns and violence to further the conspiracy.

Further, his criminal history is extensive, and includes two prior firearms offenses, as well as controlled substance offenses. When placed on community or court supervision, he has violated his release conditions, and was on court supervision at the time of the conduct currently charged in this case. The best predictor of how Martin will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one.

Nor has Martin established that, if released, he would not continue to be a danger to the community. While the location monitoring that he proposes may offer useful information about where he is, it provides little useful information about what he is doing, and the ready accessibility

of smart phones and digital communication devices would make it all too easy for him to resume his involvement (directly or through confederates) in the distribution of controlled substances without detection. Moreover, location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing.

Finally, while the record confirms that Martin has disclosed that he suffers from asthma, high blood pressure, and diabetes, this alone is insufficient to rebut the proffer by the Government that the correctional and medical staff at CDC are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus.

For all the above reasons, I reach the same conclusion as Chief Magistrate Judge Gesner. Martin has failed to rebut the presumption of detention, and the Government has established by clear and convincing evidence that he must continue to be detained for the protection of the community. Therefore, his appeal is DENIED.

## ORDER

Accordingly, it is, this 17th day of March, 2020, hereby ORDERED that Defendant's Appeal of Detention Order and Request for Hearing and, Following That, Release, ECF No. 206, IS DENIED.

/S/

Paul W. Grimm
United States District Judge